## Batrus' Appeal

*Hare & Hare*, for appellant.
*Robert C. Haberstroh*, for appellee.

PATTERSON, P. J., May 10, 1941.—In July 1940, the Board of Directors of the School District of the City of

Altoona received information from a Pennsylvania Liquor Control Board representative that Iva G. Batrus, a teacher in the senior high school, was the licensee, owner, and operator of the General Beverage Company, under the name of I. G. Batrus. The Liquor Control Board representative informed the school board that Miss Batrus had made sworn false statements and misrepresentations concerning her occupation and the ownership of the beverage business in several applications for license and renewal thereof, and that the General Beverage Company operation was under investigation.

Although Miss Batrus had been a teacher for five years, this was the first knowledge the school board had that she was engaged in any business other than teaching. The school board immediately instructed the superintendent of schools to make further investigation, and if he found the records as reported he should ask Miss Batrus for her resignation. All of which he did, but Miss Batrus refused to resign. Thereupon, in pursuance of the law governing dismissal of professional employes, the school board on August 5, 1940, adopted a resolution containing a detailed written statement of the charges against Miss Batrus, which, together with written notice of the time and place when and where she would be given an opportunity to be heard, was served upon her. The substance of the notice reads as follows:

"Because of information which has been presented to the Board of Directors of the School District of the City of Altoona and of investigation of that information, it appears that Iva G. Batrus, a professional employe of the school district, being a teacher in the senior high school of the school district, and having been continuously a teacher therein during the last five years, has, during a period of four or more years immediately prior hereto, been engaged in a business incompatible and inconsistent with the office of a teacher in the public schools of the Commonwealth of Pennsylvania, she during that period being a licensee of the Commonwealth of Pennsylvania

to distribute malt beverages and she during that period being the owner of and conducting and operating the business under the fictitious name of General Beverage Company, her place of business being now located at 1926 Eighth Avenue, in the City of Altoona, and that she has not advised the board of directors of the school district, during her employment as teacher, that she has been engaged in any other occupation, and that she has misrepresented to the Commonwealth of Pennsylvania, in her application for license to distribute malt beverages, that she is not engaged in any other business, that no other person is pecuniarily interested therein and no other person will be so interested during the continuance of her beverage license, and that the operations of the General Beverage Company, owned and conducted by her, have been and are being investigated by the Commonwealth of Pennsylvania because of alleged violations of law, all of which are and may become prejudicial to the welfare of the School District and its pupils. . . ."

Miss Batrus and her counsel attended the hearing, and subsequent thereto the school board determined that the charges were sustained, and dismissed her. She appealed from the decision of the board to the Superintendent of Public Instruction, who reversed the board on the ground that it had failed to include in the notice any of the technical terms or causes mentioned in the Teachers' Tenure Act of 1937. The school board appealed from the decision of the superintendent.

The first question. involves a matter of procedure. Under the Teachers' Tenure Act the hearing on appeal before the court is a de novo proceeding, and questions of procedure before the school board are not subject to review: Swick v. School District, 41 Pa. Superior Ct. 246. This case must be decided on the record of the evidence submitted in court.

The question of incompetency was also raised, but under the Teachers' Tenure Act, as amended June 20, 1939,

P. L. 482, a charge on that ground is not available under the facts in this case.

The principal question in this case concerns the charges upon which the complaint was based. It was argued in behalf of Miss Batrus that, notwithstanding the fact of Miss Batrus' false sworn statements and misrepresentations made to the Pennsylvania Liquor Control Board and the concealment of the fact that she was owner and licensee of the General Beverage Company from the school board, which represents the public, the proceeding was not well founded because the notice did not include the technical term of "immorality". On the other hand, the school board's position is that the detailed statement of complaint in the resolution and notice to Miss Batrus contains the constituent elements of the charge of immorality. The word "immorality" could have been inserted in the resolution, but it would not have changed the substance of the charges with regard to misrepresentations, false statements, and deception. Nor would it have enlarged Miss Batrus' opportunity to present her defense at the hearing. As it was, she was present and represented at the hearing by able counsel, and was given the benefit of every available defense under the Teachers' Tenure Act. The mere failure of the school board in this action to insert the word "immorality" in the notice of charges against her should not defeat the purpose of the law, which is designed to give the school board authority to maintain the moral and intellectual standards of teachers. School boards in reality represent the public, and school teachers are employes of the public. In this respect their duties differ from employes in private or other occupations. Substance, and not form, is the prevailing rule in the administration of justice.

In Webster's New International Dictionary "immorality" is defined to be the "state or quality of being immoral" and "immoral" is defined as "inconsistent with rectitude, purity, or good morals; contrary to conscience or moral law". The Winston Universal Library and Dic-

tionary defines the word "immoral" to be "contrary to conscience or law of right as conceived by any given community or group". The Supreme Court of Pennsylvania, by an opinion of Mr. Justice Linn, filed July 19, 1939, defines the term "immorality", as used in the Teachers' Tenure Act, as follows: " 'We hold it to be self evident that, under the intent and meaning of the act, immorality is not essentially confined to a deviation from sex morality; it may be such a course of conduct as offends the morals of the community and is a bad example to the youth whose ideals a teacher is supposed to foster and to elevate' ": Horosko v. Mount Pleasant Township School District et al., 335 Pa. 369, 372. In the same case Justice Linn also stated (p. 371) : "It has always been the recognized duty of the teacher to conduct himself in such way as to command the respect and good will of the community, though one result of the choice of a teacher's vocation may be to deprive him of the same freedom of action enjoyed by persons in other vocations."

As to the question of misrepresentation of facts and false statements included in the affidavits made by Miss Batrus in the several applications to the Liquor Control Board for a distributor's license, the testimony shows that she filed a fictitious name certificate in the office of the Prothonotary of Blair County on April 4, 1935. In the affidavit, sworn to by I. G. Batrus, it is set forth that the real name of the owner or persons interested in the said business is I. G. Batrus. The affidavit positively stated that there was no agent or other person interested. Miss Batrus' own testimony clearly establishes these sworn statements to have been false.

On March 2, 1935, I. G. Batrus filed with the county treasurer an application for the transfer of the license then operated in the premises known as 1926 Eighth Avenue to the General Beverage Company. In the application, which was sworn to, the said I. G. Batrus set forth that the applicant was the only person in any manner pecuniarily interested in the said business, and that no other

person would be in any manner pecuniarily interested therein during the continuance of the license requested. In the application for renewal of the license filed with the Liquor Control Board the applicant specifically set forth that no other person was pecuniarily interested in the business; and further she answered the following question: "Q. Are any of the applicants interested or engaged elsewhere in any type of business? A. No." Five different applications were filed during the period from 1935 to May 1940, in which the applicant made similar false statements, all which applications contained an affidavit setting forth that the applicant "has read such application and all the statements contained therein, and that the facts set forth therein are true and correct; that he (she) has also read and is familiar with the provisions of the Act of Assembly approved June 16, 1937, known as the Beverage License Law." Section 11($i$) of the Beverage License Law provides that any applicant intentionally misrepresenting any fact shall be guilty of perjury. All these applications were signed and sworn to by the said I. G. Batrus. Notwithstanding these positive sworn statements that no other person was interested in the said business, she testified, under oath, at the hearing before the school board, as follows: "Q. Isn't it a plain fact of the matter that it was your father's business and you allowed yourself to be used for his own profit? A. Yes." She further testified: "Q. He did all the buying, all the selling, all the banking, and everything else? A. Yes, sir. Q. Well, what became of the proceeds. A. Well, he took care of that as well. Q. In other words he got it all? A. Yes. Q. You didn't get any——Never even got any of the profits of the business or any of the money that you invested in that business? A. No." She also testified that she knew her father could not get a license because of the large number of judgments against him, and answered the following question: "Q. And in order to secure the license for him you agreed to take it in your name so that the Liquor Control Board would not know

the reason for it? Was that the idea? A. That is what I did."

The testimony also shows that Miss Batrus never told the school board that she was engaged in any other business. In fact, the school board did not know about it until informed by the representative of the Liquor Control Board. At the hearing it was argued in behalf of Miss Batrus that the complaint of the school board based upon her representations and false sworn statements, together with the concealment of her other occupation from the school board during the period of her teaching contract, was not well founded because her registration under the name of I. G. Batrus as proprietor of the General Beverage Company in the fictitious name docket, and the signing of the various applications for the distributor's license in the name of I. G. Batrus, which was in contradistinction to her signature of Iva G. Batrus on the school contract, was so artfully concealed as to avoid any disclosure or knowledge to the Liquor Control Board, the public, and especially the school students, and for that reason, it was ingeniously argued, it could not have worked any unfavorable influence with the student body. However, this deception does not mitigate the wrong. On the contrary, deception as to one's real status, when it is found out, destroys confidence and aggravates the offense. Discovery of the deception shows the real character. True it is, good reputation may be established by deception, but character differs from reputation, and it is axiomatic that the character of the teacher, and not the reputation of the teacher, leaves the impression for good or bad upon school pupils.

The profession of teaching is one of the most honorable and highly-respected callings in the world. As a general proposition the teachers live up to the high standards of their profession, and they are respected and held in high esteem by the communities which they so faithfully serve. A teacher whose ideals of right and wrong are so lax as to permit her to pursue a course of conduct consisting of

false affidavits, misrepresentations, withholding important information from her employer, especially when the public is her employer, and misrepresenting her true status for the purpose of misleading the Liquor Control Board of the Commonwealth of Pennsylvania, is guilty of "such a course of conduct as offends the morals of the community and is a bad example to the youth whose ideals a teacher is supposed to foster and elevate" and therefore immoral.

Miss Batrus' own testimony and the record in this case admitting false statements and misrepresentations of material facts in sworn statements show her total disregard for the sanctity of an oath. The most important element in the administration of public business and justice is the ascertainment of truth, and the test of truth from time immemorial is a solemn oath. If a solemn oath is to be treated lightly, with indifference as to the consequence of its falsity or truth, then the essential instrumentality in administration of justice will be a nullity.

Moral integrity is essential to social stability and the American way of life. The first thing the public expects of any teacher is respect for law, truth, and common honesty. Much of the trouble with the juvenile delinquency and other social laxity so prevalent of modern times is the result of disrespect for law, lack of common honesty. A teacher cannot successfully teach that which he or she does not practice or believe. The record in this case shows that, notwithstanding her high educational standard, Miss Batrus failed to practice these important qualities in very important transactions. She actually signed and made solemn oath to the affidavits which contained false statements of fact, and also stated that she had read the Beverage License Act, which provided that false statements in applications, intentionally made, would make her liable to a charge of perjury. Yet she stated that she signed the affidavits for the purpose of misleading the Liquor Control Board. These false state-

ments were "contrary to conscience or law of right as conceived by any given community or group", and further they constitute "such a course of conduct as offends the morals of the community and is a bad example to the youth, whose ideals a teacher is supposed to foster and elevate"; and therefore, under the interpretation of the term "immorality" in the case of Horosko v. Mount Pleasant Township School District, hereinbefore cited, constitute the constituent elements of immorality, which is one of the technical terms or causes for dismissal of a teacher.

The record in this case conclusively shows that the school board acted with sound discretion, with impartial and unbiased judgment, with the purpose only to promote the welfare of the community which it serves.

Therefore, the order of the Superintendent of Public Instruction is reversed, and the said Iva G. Batrus, the professional employe in question, is to be discharged.

### Decree

Now, May 10, 1941, the appeal of the School Board of the City of Altoona is sustained, and the said Iva G. Batrus is to be discharged as a professional employe.